UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

|  |  |  |
|---|---|---|
| OLIVER NEWSOME, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06-cv-307 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of

a final decision of the Commissioner of Social Security denying disability insurance benefits (DIB).

On June 24, 2002, plaintiff filed his application for DIB benefits claiming an April 27, 2001 onset

of disability. (A.R. 45-47). Plaintiff's claim was denied on initial review. (A.R. 31-36). On

January 8, 2004, plaintiff received a hearing before an administrative law judge at which he was

represented by counsel. (A.R. 348-82). On March 25, 2004, the ALJ issued a decision finding that

plaintiff was not disabled. (A.R. 15-26). On April 26, 2006, the Appeals Council denied review

(A.R. 6-8), and the ALJ's decision became the Commissioner's final decision. On May 15, 2006,

plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his

claim for DIB benefits. Plaintiff argues that the court should overturn the Commissioner's decision

on the following grounds:

      I.     THE ALJ'S FINDING THAT MR. NEWSOME HAD A 9TH GRADE (LIMITED)
            EDUCATION OVERLOOKED THE FACT THAT HE IS FUNCTIONALLY
            ILLITERATE AND IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

II.   DID THE ALJ ERR WHEN HE FAILED TO CONSIDER MR. NEWSOME'S 35 YEAR WORK HISTORY OF ARDUOUS WORK AND HIS PRESENT INCAPACITY TO PERFORM IT AS DISABLING CONSIDERING HIS FUNCTIONAL ILLITERACY?

III.   DID THE ALJ ERR IN FAILING TO FIND THAT MR. NEWSOME'S MILD MENTAL RETARDATION, HIS LACK OF ADAPTIVE SKILLS AND OTHER SEVERE IMPAIRMENTS THAT REDUCE HIS RFC FROM VERY HEAVY TO A LIMITED RANGE OF LIGHT WORK MEET AND/OR EQUAL THE CRITERIA OF LISTING 12.05C?

(Statement of Errors, Plaintiff's Brief at 8-9, docket # 12).  Upon review, I find that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision.  I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."

-2-

42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .   This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of April 27, 2001, through the date of the ALJ's decision.  Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Plaintiff had severe impairments of "chronic obstructive pulmonary disease, obesity, depression and status post right shoulder surgery."  (A.R. 17).   The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of

impairments.  The ALJ determined that plaintiff's subjective complaints were not fully credible, and

found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> The claimant has the [] residual functional capacity [to] lift a maximum of 20 pounds and
> frequently lift 10 pounds.  The claimant can stand, sit and walk for six hours our of an eight
> hour workday.  He should never use ladders, scaffolds or ropes.  The claimant should use
> ramps or stairs only occasionally.  He should avoid exposure to extreme heat, extreme cold
> and humidity.  The claimant should avoid concentrated exposure to fumes, odors, dust,
> gasses or poor ventilation.  He can only do simple unskilled work and jobs that do not require
> him to read, compute, calculate, problem solve, or reason.

(A.R. 25).  Plaintiff was unable to perform his past relevant work.  Plaintiff was 54 years old as of

the date of the ALJ's decision.  Thus, plaintiff was classified as an individual closely approaching

advanced age.  The ALJ found that plaintiff has a "'limited education' (20 CFR § 404.1564)." (A.R.

25).  Plaintiff did not have transferrable work skills.  The ALJ then turned to the testimony of a

vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age

and with his RFC, education, and work experience, the VE testified that there were approximately

5,000 jobs within the lower two-thirds of Michigan's Lower Peninsula that the hypothetical person

would be capable of performing.  (A.R. 378-79).  The ALJ held that this constituted a significant

number of jobs.  Using Rule 202.10 of the Medical-Vocational Guidelines as a framework, the ALJ

found that plaintiff was not disabled.  (A.R. 15-26).

### 1.

Plaintiff argues that the ALJ's finding that plaintiff "had a 9th grade (limited)

education overlooked the fact that he is functionally illiterate and is not supported by substantial

evidence." (Plf. Brief at 11, docket # 12).  Plaintiff contends that the ALJ "mistakenly" found that

plaintiff had a 9th grade education.  (*Id.*).  Although the plaintiff testified that the highest grade that

he had completed was 8th grade (A.R. 353), there is more than substantial evidence in the record supporting the ALJ's finding that plaintiff had a 9th grade education. On June 21, 2002, plaintiff reported to Michigan's Family Independence Agency that the highest grade he completed was 9th grade. (A.R. 199). On June 27, 2002, plaintiff reported to the Social Security Administration that the highest grade of school he had completed was 9th grade. (A.R. 68). During an August 7, 2002 mental status evaluation plaintiff reported that he "completed 9th grade at Eaton Rapids High School with no history of special education or grade repeats." (A.R. 259).

Plaintiff argues that, "The ALJ erred in ignoring evidence of Mr. Newsome's WRAT-3 tests that proved he can read and spell only at a second grade level which is functional illiteracy and with this vocational profile and limited to light work capacity, Medical Vocational Guideline 202.09 would decide [sic] he is disabled." (Plf. Brief at 12). It is patent that the ALJ did not "overlook" the results of the WRAT-3 test. Psychologist Gene Westervelt gave the test to plaintiff on December 19, 2003, at plaintiff's attorney's request. (A.R. 326-28). The ALJ discussed this test score at length and found that the it was not consistent with the record as a whole. Thus, it was not considered as a valid indicator of plaintiff's actual level of functioning:

> On December 19, 2003 the Wechsler Adult Intelligence Scale-Third Edition and Wide Range Achievement Test-Revision 3 were administered to the claimant at the request of his attorney. It was reported his verbal intelligence quotient was 64, his performance intelligence quotient a 64 and his full scale intelligence quotient was a 61. The claimant attained second grade reading and spelling levels on the Wide Range Achievement Test-3 (WAIS-III). The claimant's standard score on reading was 47 and his standard score on spelling was 64. Gene Westervelt, Ph.D., noted that the claimant's achievement scores, which may be due to lower skills or that he tends to give up easily when faced with the type of skill [test], [] would be consistent with his history of academic difficulties. Dr. Westervelt noted that a diagnosis of mental retardation would only be given if scores with test of adaptive functioning were similarly low. In addition, Dr. Westervelt speculated that the claimant's history of depression may have lowered his scores on the cognitive tests. Further[,] Dr. Westervelt concluded that the claimant's deficits on the construction tasks,

both the two dimensional subtest of the WAIS-III and the informal assessment with children's blocks was not consistent with the claimant's history of factory working, barring stroke or dementia.  (Exhibit 23F).

Although the claimant reports a history of academic problems, including leaving school in eighth grade, the record does not support a conclusion that Dr. Westervelt's testing results are fully valid and that the claimant's cognitive function falls within the mentally retarded range.  There is no evidence that the claimant has sustained any organic brain injury and the undersigned notes that he was able to perform full-time foundry work for over thirty years.  Therefore the undersigned concludes that the IQ scores are not valid and that the claimant does not contend with mental retardation.

(A.R. 19-20).

Plaintiff repeatedly asks the court to consider evidence that he never presented to ALJ in determining whether the ALJ's decision is supported by substantial evidence.  (Plf. Brief at 1, 4-5, 12, 15-16).  This is patently improper.  For more than a decade it has been clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001);  *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ.").  The court is not authorized to consider additions to the record in determining

whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

A passing request for alternative relief in the form of a "sentence four" remand appears in the last sentence of plaintiff's brief. (Plf. Brief at 20). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Foster v. Halter*, 279 F.3d at 357; *Cline*, 96 F.3d at 148; *Cotton*, 2 F.3d at 696. Indulgently, plaintiff's request for remand will be analyzed as a request for remand pursuant to sentence six of 42 U.S.C. § 405(g).

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence plaintiff now presents is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005); *Cline*, 96 F.3d at 148; *Balogh v. Commissioner*, 94 F. App'x 286 (6th Cir. 2004) (A sentence six remand "requires that all three elements be met."). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486.

On March 25, 2004, the ALJ issued his decision denying plaintiff's application for DIB benefits. (A.R. 15-26). The May 25, 2004 "Addendum to Report of Psychological Evaluation" (A.R. 342-43) prepared by Psychologist Westervelt is "new" because it was generated after the ALJ decision. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357; *see also Templeton v. Commissioner*, 215 F. App'x 458, 463 (6th Cir. 2007). In fact, the addendum was created in response to the ALJ's decision, pursuant to a request from plaintiff's attorney asking Westervelt to opine as to "how valid" Westervelt believed the December 19, 2003 test results had been. (A.R. 342).

Contrary to plaintiff's apparent assumption, "good cause" is not established solely because evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver*, 804 F.2d at 966; *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good cause); *Cranfield v. Commissioner*, 79 F. App'x 852, 859 (6th Cir. 2003) (same). Plaintiff's brief fails to address his burden of demonstrating good cause. Plaintiff has not carried his burden of explaining why this evidence was not obtained earlier and submitted to the ALJ before his decision. Plaintiff has not shown "good cause."

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d

709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). Plaintiff has not addressed or carried his statutory burden. Two months after the ALJ issued a decision finding that plaintiff was not disabled, Psychologist Westervelt prepared the addendum to his report at the request of plaintiff's attorney. The addendum did not reflect the results of any additional testing. Upon review, I am not persuaded of a reasonable probability that the Commissioner would have reached a different decision if the proffered evidence had been presented and considered.

In summary, plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. Accordingly, I recommend that plaintiff's request for remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

Plaintiff argues that the ALJ "erroneously concluded that plaintiff had a marginal education" and that the ALJ should have classified plaintiff as "illiterate" based on the WRAT-3 test score previously discussed. (Plf. Brief at 12). The ALJ found that plaintiff had a "limited education" (A.R. 25, citing 20 C.F.R. § 404.1564), not a "marginal education." Section 404.1564 defines the term "limited education" and distinguishes it from marginal education and illiteracy:

In evaluating your educational level, we use the following categories:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do

> most of the more complex job duties needed in semi-skilled or skilled jobs.  We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 404.1564(b).  As shown above, the grade level completed by the claimant generally determines the appropriate education level classification.   Plaintiff had a ninth grade education, which placed him solidly within the limited education category.  The regulations permit the ALJ to find exceptions to this general rule.  The claimant's daily activities and past work experience and responsibilities may indicate that the claimant has greater intellectual abilities, and the numerical grade level completed may not represent the claimant's actual educational abilities.   20 C.F.R. § 404.1564(a), (b); *see Hammond v. Apfel*, No. 99-1451, 2000 WL 420680, at * 5-6  (6th Cir. Apr. 12, 2000); *see also Palomo v. Barnhart*, 154 F. App'x 426, 430 (5th Cir. 2005); *Nicewicz v. Apfel*, 38 F. App'x 809, 812 (3d Cir. 2002); *Cosper v. Apfel*, No. 99-5178, 2000 WL 1140258, at * 1 (10th Cir. Aug. 11, 2000); *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996).  I find that the administrative record contains more than substantial evidence supporting the ALJ's factual finding that plaintiff fell within the general rule and has a limited education.

**2.**

Plaintiff argues that the ALJ erred "when he failed to consider Mr. Newsome's 35 year work history of arduous work and his present incapacity to perform it disabling considering his functional illiteracy[.]"[1]  (Plf. Brief at 13).  Specifically, plaintiff contends that the ALJ erred "when he did not consider if Mr. Newsome met the requirements of 20 C.F.R. §§ 404.1520(g)(2) and 404.1562 and was disabled as a 'worn-out worker.'" (Plf. Brief at 14).  The ALJ was not persuaded

---

[1]Plaintiff's "illiteracy" argument should be rejected for the reasons previously specified.

that plaintiff satisfied the requirements for disability under the requirements of the "worn out worker" regulation.  Generally, in order to be found disabled within the meaning of the Social Security Act, an individual must have a medically determinable physical or mental impairment of such severity that he is not only unable to do previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy.  *See Program Policy Statement Titles II & XVI:  Medical-Vocational Profiles Showing an Inability to Make an Adjustment to Other Work*, SSR 82-63 (S.S.A. 1982)(reprinted at 1982 WL 31390, at * 1).[2]  Section 404.1562 describes a set of functional and vocational limitations which present an unfavorable vocational profile, such that an inability to make a vocational adjustment to other work may be inferred if the person meets the requirements and is not engaging in substantial gainful activity.  1982 WL 31390, at * 2.  Section 404.1562(a) states:

> If you have done only arduous unskilled physical labor.  If you have no more than a marginal education (see § 404.1564) and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) (see §§ 404.1520(c), 404.1521, and 404.1523), we will consider you unable to do lighter work, and therefore, disabled.

20 C.F.R. § 404.1562(a).  "Careful examination of the evidence, including a description of all jobs the individual has held (with sufficient details about the job content to show any skills involved and the level of physical exertion required) is necessary to establish whether the individual meets each criterion."  1982 WL 31390, at * 2.  Plaintiff has a "limited" rather than a "marginal" education.

_____

[2]20 C.F.R. § 404.1520(g) states, "Your impairment(s) must prevent you from making an adjustment to any other work."  Subsection 2 states, "We use different rules if you meet one of the two special medical-vocational profiles described in § 404.1562.  If you meet one of these profiles, we will find that you cannot make the adjustment to other work, and that you are disabled."  20 C.F.R. § 404.1520(g)(2).

Thus, plaintiff did not satisfy the requirements necessary to be considered disabled under 20 C.F.R. § 404.1562(a).

The record indicates that plaintiff would probably not satisfy two other requirements of section 404.1562(a). The duration of work experience of 35 years or more "assures that the person has a long-term commitment to work which is arduous and unskilled." *Id.* at 3. Thirty-five years is required. Work of a duration less than 35 years does not satisfy the requirements of 20 C.F.R. § 404.1562(a). *See e.g.*, *Street v. Barnhart*, 340 F. Supp. 2d 1289, 1294 (M.D. Ala. 2004); *Berrios-Vasquez v. Massanari*, No. Civ. A. 00-CV-2713, 2001 WL 868666, at * 9 (E.D. Pa. May 10, 2001). The absence of any developed argument by plaintiff's attorney at the administrative level makes it very difficult to determine whether there is even a theoretical possibility that plaintiff could meet the 35-year duration requirement. Plaintiff reported that he had worked as a water tester for 8 years (1984 to 1992). (A.R. 63). Plaintiff received DIB benefits for 5 years. Plaintiff filed an earlier application for DIB benefits and had been allowed a period of disability from July 25, 1988 to November 1993. Plaintiff's DIB benefits terminated in 1993 because plaintiff was engaging in substantial gainful activity. (A.R. 15). Plaintiff worked for 9 years as a grinder (1992 to 2001). (A.R. 63). Plaintiff stated that his work as a water tester and grinder was performed as an employee of Harvard Industries. (A.R. 91-92). Plaintiff testified that he worked a total of 33 years for Harvard Industries,[3] but the record suggests that plaintiff included at least a portion, if not all, his 5-year period of disability in this calculation. (A.R. 353). Plaintiff's remote work history included work on a farm weeding onions and potatoes, and sorting and bagging the harvest. (A.R. 353, 362).

---

[3]Other documents in the record indicate that plaintiff worked for Harvard Industries for "30 years." (A.R. 200).

Plaintiff began farm work after leaving school at age 16, which, given plaintiff's date of birth, would place the start of his farm employment sometime during 1966. (*Id.*). Plaintiff stopped working at the farm in 1968, roughly 2 years later. (A.R. 362). Plaintiff's records show no earnings for 1987. (A.R. 54-56). In summary, the record indicates that plaintiff would probably fall short of satisfying the 35-year component.

Only "arduous unskilled[4] physical labor" satisfies the requirements of 20 C.F.R. § 404.1562(a). SSR 82-63 describes "arduous work" as follows:

> Arduous work is primarily physical work requiring a high level of strength or endurance. No specific physical action or exertional level denotes arduous work. While arduous work will usually entail physical demands that are classified as heavy, the work need not be described as heavy to be considered arduous. For example, work involving lighter objects may be arduous if it demands a great deal of stamina or activity such as repetitive bending and lifting at a very fast pace. Thus, there is room for judgment in deciding whether this criterion is met.

1982 WL 31390, at * 3. Plaintiff's "very heavy" work as a water tester would certainly be considered arduous. (A.R. 92, 377). His farm work may or may not have been arduous. During plaintiff's 9 years working as a grinder, the heaviest weight plaintiff lifted was 15 pounds. (A.R. 91). The vocational expert classified this work as light work. (A.R. 377). Plaintiff has not cited, and I have been unable to locate, a single case where the Commissioner's decision has been overturned because the ALJ failed to find that a claimant's "light work" was "arduous" within the meaning of 20 C.F.R. § 404.1562(a). In summary, plaintiff did not satisfy 20 C.F.R. § 404.1562(a)'s requirement that he have "no more than a marginal education," and plaintiff has failed to establish the two other requirements.

_____

[4]The vocational expert testified that plaintiff's past relevant work as a water tester and as a grinder were unskilled. (A.R. 377). Plaintiff's testimony established the unskilled nature of his farm work.

**3.**

Plaintiff's remaining argument is that the ALJ's step-3 finding that plaintiff did not meet or equal the requirements of listing 12.05C is not supported by substantial evidence. (Plf. Brief at 15-19). The Commissioner utilizes a 5-step sequential analysis to determine whether a claimant is disabled within the meaning of the Social Security Act. *See McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001). Step-3 regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006)(en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted). Plaintiff claims that he met or equaled the requirements of listing 12.05C

A claimant must show that he or she satisfies <u>all</u> the individual requirements of a listing. *See Conn v. Secretary of Health & Human Servs.*, 51 F.3d 607, 609 (6th Cir. 1995); *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *see also Blanton v. Commissioner*, 118 F. App'x 3, 6 (6th Cir. 2004); *Thacker v. Social Security Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004)("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which

-14-

describes how the impairment has such equivalency."). "Unless all of the requirements of the listing are present, the claimant does not satisfy that listing." *Roby v. Commissioner*, 48 F. App'x 532, (6th Cir. 2002) (citing *Hale*, 816 F.2d at 1083). An impairment satisfies a listing only when it manifests the specific findings described in the medical criteria for that particular impairment. *See* 20 C.F.R. § 404.1525(c); *see Foster v. Halter*, 279 F.3d at 354; *see also Lusk v. Commissioner*, 106 F. App'x 405, 411 (6th Cir. 2004)("Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment.").

Listing 12.05C contains the following requirements:

12.05 Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * *

C.     A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work- related limitation of function . . . .

The listing must be read as a whole, and plaintiff had the burden of demonstrating that he met all parts of the listing. *See Foster v. Halter*, 279 F.3d at 354; *see also Potter v. Commissioner*, 223 F. App'x 458, 464-65 (6th Cir. 2007). "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria." *Foster*, 279 F.3d at 354.

-15-

Plaintiff argument is rooted in the I.Q. scores that the ALJ rejected because they were not consistent with plaintiff's developmental history, work history, and daily activities. (A.R. 20). The ALJ's finding that the I.Q. scores were not valid is supported by substantial evidence for the reasons previously stated herein. *See Maggard. v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)("The text of § 12.05C requires an I.Q. score to be 'valid.'"); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Defendant's brief correctly observes that plaintiff's lengthy work history undercuts plaintiff's claim of a listing-level impairment. (Def. Brief at 13, docket # 13). Furthermore, the administrative record does not support an onset of "significantly subaverage general intellectual functioning with deficits in adaptive behavior" manifested before age 22 required by listing 12.05C. *See Carmack v. Barnhart*, 147 F. App'x 557, 560 (6th Cir. 2005); *Daniels v. Commissioner*, 70 F. App'x 868, 872 n. 1 (6th Cir. 2003). I find that the ALJ's determination that plaintiff did not meet the requirements of listing 12.05C is supported by more than substantial evidence.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed and the request for a remand be denied.


Dated:   August 3, 2007               /s/  Joseph G. Scoville
                                      United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v.*

*Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).