UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| OLIVER NEWSOME, | Case No. 1:06-cv-307 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Scoville |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**Order Overruling Plaintiff's Objections, Adopting R&R, and Terminating Case**

This matter was referred to the Honorable Joseph G. Scoville, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on August 3, 2007.

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." Likewise, Federal Rule of Civil Procedure 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Calculating the ten-day period as prescribed by Federal Rule of Civil Procedure 6(a), the court finds that plaintiff Newsome timely filed objections to the R&R. The court also finds that Newsome's objection is sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which he has objected.

The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objections. For the reasons explained by the R&R, substantial evidence supported the ALJ's determination that Newsome's physical impairments (chronic obstructive pulmonary disease ("COPD"), high blood pressure, obesity, and right shoulder surgery), mental impairments (depression and mild retardation), and limited education did not render him disabled between his alleged disability onset date of April 27, 2001 (age 51) through his date last insured ("DLI"). Specifically, there was substantial evidence to support the ALJ's determination that although Newsome had a "limited education" under 20 C.F.R. § 404.1564 (rather than a "marginal education" or illiteracy) and lacked transferable work skills, he retained the residual functional capacity ("RFC") for a limited range of unskilled light work, so long as he did not use ladders, scaffolds, or ropes; used stairs or ramps only occasionally; avoided exposure to extreme heat, cold and humidity, or concentrated exposure to fumes, odors, dust, gases, or poor ventilation; and was not required to read, compute, reason, calculate, or solve problems. AR 25.

Newsome first challenges the ALJ's finding that he had a limited education as defined by the regulations. Before the Magistrate Judge, Newsome claimed that he finished only the eighth grade, but as the Magistrate Judge noted, his testimony to that effect was contradicted by his own reports to a Michigan state agency, to the Social Security Administration, and on a mental status evaluation form – all in 2002 – that he had completed the *ninth* grade and had not attended special-education classes, *see* AR 68-69, 199 and 259.

Newsome now argues that the Magistrate Judge is elevating form over substance by focusing on which grade he finished rather than on the degree of his functional literacy. Newsome relies on

*Skinner v. HHS*, 902 F.2d 447 (6th Cir. 1990), where our Court of Appeals described the disability claimant as follows:

> He was educated in a one-room school in rural Mississippi, and he testified that he attended school full-time until age 12 when he was required to commence seasonal field work. Thereafter, he continued his education on a part-time basis until age 17. Despite several years of school attendance, Mr. Skinner testified at the administrative hearing that he only completed the third grade.
>
> n. 1   The ALJ found Mr. Skinner's testimony regarding his education contradicts the information Mr. Skinner provided on his disability report. The disability report indicated that Mr. Skinner completed the eighth grade.
>
> On appeal, Mr. Skinner challenges the district court's finding that there is substantial evidence to support the ALJ's finding that Mr. Skinner received a marginal education and, therefore, is not disabled pursuant to 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.10. Skinner argues that the ALJ's determination at step five of the sequential evaluation was erroneous, because the record provides undisputed evidence that Skinner was illiterate. We find Mr. Skinner's argument persuasive.

*Skinner*, 902 F.2d at 448-49.  Newsome seeks to compare himself to the successful claimant in *Skinner*, arguing that

> here also was submitted proof that Newsome was and is functionally illiterate. To argue otherwise is to fly in the face of the simple,17 year old instruction of *Skinner*. This case, like *Skinner*, involves the mechanical application of 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.10 which directs "not disabled" rather than fairly considering the question of literacy and Grid Rule 202.09 which directs "disabled" because of illiteracy. Had the ALJ accepted the psychologist's test results [citing AR 326-28] as he was almost bound to do, given the testimony at Newsome's hearing[, he would have used 202.09 as a framework and declared Plaintiff "disabled" . . . . [t]he ALJ and now the Magistrate Judge want to overlook *Skinner* in their rush to find a disabled, illiterate and retarded man "not disabled."

Newsome's Objections at 2.

But Newsome's situation is readily distinguishable from that of the claimant in *Skinner*, and he fails to show the absence of substantial evidence to support the ALJ's finding that he is not illiterate. Newsome argued before the Magistrate Judge that *Skinner* is "on all fours with this case",

3

but in *Skinner* the Sixth Circuit noted that the record was "replete with evidence that Mr. Skinner is illiterate." *Skinner*, 902 F.2d at 450. That evidence included not only reading and mathematics scores like those on which Newsome relies, but also a diagnosis of illiteracy by an analyst who agreed that *valid* reading and math scores at the level shown demonstrated illiteracy. *Skinner*, 902 F.2d at 450. In this case, by contrast, Newsome has not submitted any diagnosis or opinion by a medical professional stating that he is illiterate.

Only *after* the ALJ's March 2004 decision did Newsome's counsel obtain and submit a letter from Newsome's testing psychologist, Dr. Westervelt, opining that the tests he administered to Newsome in December 2003 (the Wechsler Adult Intelligence Scale and the Wide Range Achievement Test-Revision 3 ("WRAT-3")) were valid and that the relatively low scores could be relied on as indicative of Newsome's current function. Dr. Westervelt's May 2004 letter stated that Newsome's scores were a "good sample" of Newsome's current functioning, AR 343, but that letter was never presented to the ALJ.

As the Magistrate Judge notes, R&R at 6, when the Social Security Administration ("SSA") Appeals Council denies review, as it did here, the federal courts' review is limited to the evidence that was submitted to the ALJ. *See Elliott v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002) ("If the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ.") (citing, *inter alia*, *Cline*, 96 F.3d at 148, and *Cotton*, 2 F.3d at 696); *see also Wyatt v. HHS*, 1993 WL 492311, at *3 n.2 (6th Cir. Nov. 29, 1993) ("We must therefore treat the post-hearing evidence submitted to the Appeals Council no differently than evidence submitted for the first time to us.").

Under sentence six of 42 U.S.C. § 405(g), the court may order a remand for the ALJ to

consider additional evidence, but only if the claimant shows the court that the proffered is "new" and "material." *Bass v. McMahon*, No. 06-4415, – F.3d –, –, 2007 WL 2372297, at *5 (6th Cir. Aug. 21, 2007). To show that the evidence is new, Newsome has to show that the evidence was either not in existence or not available to him at the time of the ALJ hearing, *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006), and that he had good cause for failing to submit it to the ALJ before the ALJ's decision, *Bass*, – F.3d at –, 2007 WL 2372297 at *5, and *Hollon*, 447 F.3d at 483. To show that the evidence is material, Newsome has to show a reasonable probability that it would persuade the ALJ to reach a different disposition on his disability claim. *Hollon*, 447 F.3d at 483.

As the R&R notes at 7-8, Newsome's briefs before the Magistrate Judge did not attempt to show the requisite good cause for failing to obtain and submit Dr. Westervelt's letter to the ALJ before the ALJ's decision. In any event, as a matter of law, a claimant's failure to ask the ALJ to keep the record open so that he may generate and submit new evidence "in and of itself shows a lack of good cause." *Bass*, – F.3d at –, 2007 WL 2372297 at *5 (citing *Curry v. HHS*, No. 87-1779, 1988 WL 89340, at *4 (6th Cir. Aug. 29,1988)). Newsome's failure to show good cause alone is reason enough to deny a sentence-six remand, without even considering the probability that the proffered evidence would have caused the ALJ to reach a different conclusion, *see* R&R at 8-9.


Moreover, Newsome fails to show that the record compelled the ALJ to credit his retained psychologist's opinion and the result of the intelligence tests he administered. Specifically, Newsome fails to show the lack of substantial evidence to support the ALJ's finding that his education is best classified as "limited" rather than "marginal" or "illiterate." According to 20 C.F.R. § 404.1564, "Illiteracy means the inability to read or write. * * * Generally, an illiterate

person has had little or no formal schooling." The regulation defines the next-higher level of education, marginal education, to mean "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level  less is a marginal education." *Id.* Finally, the regulation defines the next-higher level of education, limited education, to mean "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." *Id.*

The regulation states that an education from the 7th grade through the 11th grade generally is considered a limited education. *Id.* As discussed above, there was substantial evidence to support the ALJ's finding that Newsome completed the ninth grade, not the eighth grade as he alleges, but in any event, either an eighth- or ninth-grade education would generally lead to a finding of limited education unless other evidence shows that another classification is more appropriate.

Newsome presents his own testimony that he is unable to read or write, and his wife's testimony that she has never seen him read or write, and the ALJ acknowledged and considered that testimony. The ALJ could reasonably reject that testimony as not fully credible, however, in light of the fact that Newsome filled out his disability application in 2001 and a pain questionnaire in July 2002, AR 69 and 85-89; told Dr. Westervelt that he had never been able to read or write "very well", AR 326, as opposed to never being able to read or write at all; and, according to his daughter, liked to read the newspaper daily and "does word search," AR 73 and 81. *See Bell v. Barnhart*, 148 F. App'x 277, 283-84 (6th Cir. 2005) (notwithstanding claimant's testimony that he was unable to read and had never read a newspaper or a book, there was substantial evidence to support the ALJ's finding that he was not illiterate, including the fact that he "completed several forms requiring

written answers" and his wife's testimony that "[i]t's not that he can't read.  The problem is . . . he has to concentrate so much on the words that what he's read doesn't sink in.").[1]

Therefore, there was substantial evidence to support the ALJ's determination that Newsome had a limited education rather than a marginal education or illiteracy.  That, in turn, defeats Newsome's second objection to the R&R.  Namely, Newsome contends that had the ALJ found him illiterate, the SSA's Medical-Vocational Guidelines (colloquially known as "the grid") and the underlying regulation would direct a finding of disability for a person of Newsome's age, education, and disability.  *See* 20 C.F.R. § 404.1562(a) *(* "If you have no more than a marginal education [which is less than a limited education] . . . and work experience of 35 years or more during which you did only arduous unskilled physical labor, and you are not working and are no longer able to do this kind of work because of a severe impairment(s) . . . , we will consider you unable to do lighter work, and therefore, disabled.").  But because the court sustains the ALJ's finding that Newsome had a limited education (which is greater than the required "marginal" education) and was not illiterate, 20 C.F.R.

---

[1]

*Cf. Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 756-57 (6th Cir. 2004) ("Although Range testified that he could not read or write, Range did have a tenth or eleventh grade education and attended mechanics school.  He also performed semiskilled work his entire life. * * * The only evidence of Range's alleged illiteracy is his testimony.  His education and work experience support the ALJ's conclusion that Range has a marginal education.");

*Howard v. Massanari*, 255 F.3d 577, 579-80, 584-86 (8th Cir. 2001) (claimant presented evidence that at least one intelligence test showed her reading at a second-grade level, she received low or failing grades in school, she found reading to be an especially difficult subject, she was enrolled in a reading class when she applied for benefits, and she testified that she needed someone to read her the questions for her certified nurses aide exam; nonetheless, substantial evidence supported the ALJ's finding that she was functionally literate, including the fact that she passed a driver's test that "ostensibly requires an applicant to complete a written exam" and did not testify that someone read the questions to her, and psychologist who administered Wechsler intelligence test found that she had "borderline intellectual functioning" but made no mention of illiteracy).

§ 404.1562(a) does not apply.

Therefore, there is no need to consider whether Newsome could meet the other requirements for a finding of disability under that regulation (a duration of work of 35 years or more, and the classification of all of that work as "arduous" under SSR 82-3). *See* R&R 10-13 (concluding that Newsome probably would not satisfy these latter two requirements of 20 C.F.R. § 404.1562(a) either); Commissioner's Br. at 14-15 (arguing that Newsome's 1992-2001 work as a "grinder" involved only light exertion and so was not "arduous", and that even including the grinder years, Newsome worked a total of only 33 years, not 35).

Finally, Newsome contends that there was no substantial evidence to support the ALJ's Step Three determination that he did not meet (or medically equal) the requirements of Listing 12.05C, the listing for mental retardation. To determine whether a claimant is disabled, the Commissioner uses a five-step "'sequential evaluation process,'" *Cruse v. Comm'r of Soc. Sec.*, No. – F.3d –, –, 2007 WL 2752888, *5 (6th Cir. Sept. 24, 2007) (quoting 20 C.F.R. § 404.1520(a)(4)). At the third step, the Commissioner considers whether the claimant "is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations," in which case he will be found disabled without a consideration of vocational factors. *See Cruse*, – F.3d at –, 2007 WL 2752888 at *5 (quoting *Wyatt v. HHS*, 974 F.2d 680, 683-84 (6th Cir. 1992); 20 C.F.R. § 1520(a)(4)(iii).

To meet or equal Listing 12.05C, Newsome had to show that he suffers "a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. . . . before age 22" *and* that he meets any one of the four

8

criteria A through D in that Listing.  Newsome contends that he satisfies the general criterion and specific criterion C, "a valid verbal, performance, or full scale IQ of 60 to 69 inclusive and physical or other mental impairment imposing additional and significant work-related limitation of function . . . ."  However, substantial evidence supported the ALJ's decision to reject Newsome's 60-69 IQ score as inconsistent with the broader record of his developmental and work history and daily activities, particularly his ability to work a full-time job successfully for over thirty years, AR 20. The ALJ's conclusion on this score was consistent with the statement of Newsome's own testing psychologist, Dr. Westervelt, who undermined Newsome's argument by opining that his low test scores were "unusual" in light of his work history.  *See Schuler v.  Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004) (substantial evidence supported ALJ's determination that claimant did not meet requirements of mental-retardation listing; claimant had scored above 70 numerous times over the years, and *"the validity of the most recent test, which resulted in a score of 69, had been undermined by its own administrator"*) (emphasis added); *Maynard v. Bowen*, No. 86-3192, 815 F.2d 705, 1987 WL 36549, *5 (6th Cir. Mar. 2, 1987).[2]

Accordingly, having reviewed the ALJ's opinion, the parties' briefs, the R&R, and plaintiff Newsome's objections to the R&R, the court hereby **OVERRULES** the plaintiff's objections, **ADOPTS** the R&R [docket #15], and **AFFIRMS** the Commissioner's decision.

---

[2]

*Cf. Anderson v. Comm'r of Soc. Sec.*, No. 98-6284, 198 F.3d 244,  1999 WL 1045072, *6 (6th Cir. Nov. 12, 1999) (government was substantially justified in defending ALJ's determination that claimant did not meet Listing 12.05C criteria for mental retardation; "An examination of the record indicates the ALJ was justified in rejecting the [recent] performance score of 69. * * * [T]he administrator of the more recent test deemed the more recent scores invalid due to either malingering or oppositional and defiant behavior on the part of claimant.").

This case is **TERMINATED.**

This is a final and appealable order.

**IT IS SO ORDERED this 12th day of October 2007.**

/s/ Paul L. Maloney

_____

Paul L. Maloney
United States District Judge